Opinion filed June 7, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed June 7, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00234-CR 

                                                    __________

 

                             PETER HELLMUTH EGGERT, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 266th District Court

                                                           Erath County, Texas

                                                Trial
Court Cause No. CR 12121 

 



 

                                                                   O
P I N I O N

 

The jury convicted Peter Hellmuth Eggert of
conspiracy to fabricate physical evidence, and the trial court sentenced him to
two years confinement, probated for five years, and a fine of $5,000. We
affirm.

                                                             I.  Background Facts








Peter Eggert and his son Mikel Peter Eggert were
indicted for conspiracy to fabricate physical evidence by making, presenting,
or using the purported affidavits of Kim Whiteley or M.W. with the knowledge
that they were false and with the intent to affect an appeal pending in this
court.  The indictments were
consolidated, and Peter and Mikel were tried together.  The jury found both guilty, and the trial
court assessed punishment at two years confinement and a $5,000 fine.  The trial court probated the term of
confinement for five years but not the fine.

                                                                       II.  Issues

Peter challenges his conviction with nine
issues.  These can be grouped into four
areas:

$          sufficiency
of the evidence;

$          charge
error;

$          ineffective
assistance of counsel; and

$          Peter=s motion for new trial.

                                                                     III.
Analysis

A.  Was
the Evidence Legally and Factually Sufficient?

Peter=s
first three issues challenge the sufficiency of the evidence to support the jury=s guilty verdict.  Specifically, Peter contends the evidence was
insufficient because the affidavits were work product and the statute contains
a work-product exception, the affidavits could not have altered the underlying
proceedings, and he did not know the affidavits were false at the time he
prepared them.

In reviewing claims of legal sufficiency of the
evidence, we review all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App. 2000); Clewis
v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996).  Due deference must be given to the fact‑finder=s determination, particularly
concerning the weight and credibility of the evidence.  Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App. 2000); Jones
v. State, 944 S.W.2d 642 (Tex. Crim. App. 1996).

To determine if the evidence is factually
sufficient, the appellate court reviews all of the evidence in a neutral
light.  Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v. State,
144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson, 23 S.W.3d at 10-11;
Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis,
922 S.W.2d at 129.  Then, the reviewing
court determines whether the evidence supporting the verdict is so weak that
the verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Watson, 204 S.W.3d at 414-15; Johnson,
23 S.W.3d at 10-11.








1. 
Work Product.

Tex. Pen.
Code Ann. ' 37.09
(Vernon 2003) prohibits tampering with or fabricating physical evidence, but
the statute does not apply Aif
the record, document, or thing concealed is privileged or is the work product
of the parties to the investigation or official proceeding.@ 
Section 37.09(b).  Peter argues
that the Whiteley affidavits were work product, that the statutory exception
applies, and that the evidence was, therefore, legally insufficient.

Section 37.09 proscribes several different methods
of tampering with or fabricating physical evidence, but the work-product
exception by its terms only applies to records, documents, or things concealed.  See Cuadra v. State, 715 S.W.2d 723,
724 (Tex. App.CHouston
[14th Dist.] 1986, pet. ref=d)
(the work-product exception applies only to concealed documents).  Peter was indicted for conspiracy to make,
present, or use false affidavits. 
The exception is inapplicable, and issue one is overruled.

2. 
Legal Impossibility.

Peter next argues that the evidence was legally or
factually insufficient to establish his intent to affect the Gallardo appeal[1]
because the Whiteley affidavits could not have been considered by this
court.  The State responds that
consideration of the Whiteley affidavits by this court was not legally
impossible and that the language of Section 37.09 makes this immaterial because
the State was not required to prove that the affidavits would or could have
affected the outcome of the Gallardo appeal.








We agree with the State.  Section 37.09 required the State to prove
that Peter conspired to make, present, or use a document knowing that it was
false and with the intent to affect the course or outcome of the Gallardo
appeal.  The statute is silent on any
requirement that the State prove the attempt would have succeeded, and we have
found no case recognizing or imputing such a requirement.  Moreover, we believe such a requirement is
inconsistent with the statute=s
plain intent.  Our judicial system
necessarily relies upon a baseline belief in the sanctity of the process.  Any attempt to use fabricated evidence B regardless of the ultimate success of
that attempt B is
completely inconsistent with not only the administration of justice but with
the integrity of the process.  The
statute recognizes this by outlawing a wide range of activities whose mere
presence could undermine confidence in the judicial system.  It would make no sense to say that an attempt
to make, present, or use fabricated evidence is any less culpable merely
because the attempt was poorly conceived.  
   The State was not required to
prove that this court could have considered the Whiteley affidavits or that
those affidavits would have affected the outcome of the Gallardo appeal.  The State was merely required to prove that
Peter intended to affect the outcome of the Gallardo appeal. Peter=s second and third issues are
overruled.

3. 
Knowledge of the Affidavits=
Falsity.

Peter next argues that the evidence was legally
and factually insufficient to establish intent because he was not advised that
the affidavits were untruthful until after they had been prepared. When all the
evidence is viewed in the light most favorable to the verdict, a rational trier
of fact could have found the requisite intent beyond a reasonable doubt.  See Jackson, 443 U.S. at 318-19.
Peter knew that Gallardo was guilty of the underlying offense and, thus, knew
that any affidavit asserting the crime did not take place was untruthful.  However, Peter proceeded nonetheless.  For this same reason, when the evidence is
viewed in a neutral light, the evidence is not so weak that the verdict is
clearly wrong and manifestly unjust, nor is the verdict against the great
weight and preponderance of the conflicting evidence.  Watson, 204 S.W.3d 414-15.








Peter and his son were representing Gallardo in
his deportation proceedings.  Their
efforts appeared unsuccessful, and they met with Assistant District Attorney
Jason Cashon to discuss having Gallardo=s
criminal conviction set aside.  Cashon
advised them that this could only occur if there was a finding of actual
innocence.  Gallardo had been indicted
for aggravated sexual assault and indecency with a child.  Gallardo signed a stipulation of evidence and
pleaded guilty to indecency with a child by exposure, and that judgment became
final.  Subsequently, the Immigration and
Naturalization Service detained Gallardo, who was on probation, for deportation
based on the conviction.  Cashon later
discussed with them a potential writ of habeas corpus.  Because neither Peter nor his son were
licensed to practice law in Texas state courts, Mikel Eggert asked Joe Lopez, a
law school friend, to help.  A petition
for writ of habeas corpus was filed, but the trial court denied that petition
and found that it was frivolous and groundless. 
On February 13, 2004, Gallardo appealed that denial to this court.

Peter met with Lee Roy Gaitan, a former chief of
police of Dublin.  He told Gaitan that he was representing some
people in an immigration matter, he described the Gallardo litigation, and  he asked Gaitan if he would be interested in
helping Gallardo.  Specifically, he asked
Gaitan to sign a document that he could use with the Board of Pardons and
Parole and to help get documents to Kim and M.W.  Gallardo had been convicted of indecency with
a child by exposure; the victim was Kim Whiteley=s
daughter, M.W.  Peter told Gaitan that
Gallardo had done wrong, that he was not disputing that, but that he was
preparing something where Gallardo could possibly serve prison time to prevent
the deportation.  Gaitan signed the
statement without thoroughly reading it. 
When he subsequently did read that statement, he realized that it
contained false information.

On March 22, 2004, Peter gave Gaitan a folder with
papers and told him to have Kim sign the papers in front of a notary and then
to give the papers back to him. 
Subsequently, Peter started calling Gaitan every day to check on his
progress.  Gaitan met with Kim on March
31, 2004.  By then, Gaitan realized that
the documents Peter wanted Kim to sign were false.  He did not give the documents to her but
threw them in the trash and told her that Peter was trying to contact her.  Kim gave Gaitan permission to provide Peter
with her phone number.

Peter called Kim and asked her to meet with him to
discuss the Gallardo case.  She agreed to
do so and went to his office.  He asked
her if she remembered what had happened to her daughter.  When she began to describe the incident, he
became upset and told her that he did not want to hear what happened and that
he just wanted to get the matter fixed. 
He gave her an affidavit for herself and her daughter and asked her to
read them and have them signed and notarized. 
Peter gave her $20 for gas.  He
told her that, if she and her daughter signed the papers, he would give her
anything  she wanted and that, if she
needed more money, it was available.

Kim read the affidavits.  Neither was truthful.  The following day, Kim told Peter that she
did not feel that he was being truthful, that she did not want to talk to her
daughter about it, and that she wanted to drop the whole thing.  She told Peter that she did not want him
bothering her anymore.  Peter told her
that he would continue to call until she talked to her daughter.








On April 3, 2004, Peter called Kim again.  He asked her to bring her daughter to
Stephenville and told her that he really needed to talk to them and that he
would continue to call her until she brought her daughter to meet him.  That same day, Peter spoke with Gaitan and
told him that he thought Kim was getting cold feet and that he wanted Gaitan to
meet with her.  After visiting with her
attorney, Kim ultimately turned the documents over to the local Texas Ranger
who investigated the matter.

This evidence is sufficient to support the jury=s finding.  There was evidence that Peter knew from the
beginning that Gallardo was guilty but that his sole intent was to prevent the
deportation by whatever means necessary. 
Peter acknowledged to Gaitan that Gallardo had done wrong, and when Kim
began relating what had happened, he told her that he was not interested in the
facts. However, the statement he provided to Gaitan and the affidavits he
prepared for Kim and her daughter were fundamentally inconsistent with Gallardo=s guilt.  Moreover, there was evidence that, after Kim
specifically told Peter that the affidavits were untruthful, he continued to
pressure her.

The evidence also establishes that the affidavits
were intended for use with this court. 
On April 5, 2004, Gallardo filed a motion to extend the time for filing
his brief with this court.  That motion
included the following statement:

Appellant=s
counsel has recently discovered new evidence which controverts the State=s original allegations.  Appellant needs additional time to file his
brief in order to document such new evidence.

 

The only evidence of  Anew evidence@
is the proposed Whiteley affidavits. 
Furthermore, the motion indicates additional time was needed to Adocument@
the new evidence.  Peter was then
actively involved in obtaining signatures on the Whiteley affidavits.  There was no evidence of any other efforts to
document new evidence.  This evidence is
legally and factually sufficient to support the jury=s
verdict.  Issues four and five are
overruled.

B. 
Charge Error.








Peter argues that the trial court erred by
refusing to submit an instruction on the work-product defense or,
alternatively, that his trial counsel was ineffective if this issue was not
properly preserved.  When analyzing a
jury‑charge issue, we must first decide whether error exists.  Middleton v. State, 125 S.W.3d 450,
453 (Tex. Crim. App. 2003).  If so, we
analyze that error for harm.  The degree
of harm necessary depends upon whether the error was preserved by
objection.  If the defendant properly
objected to the charge, some harm requires reversal.  Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985).  If the defendant
did not object to the charge, reversal is not required unless the record shows
egregious harm to the defendant.  Id.

We have previously found that the work-product
exception only applies when the State alleges that the defendant concealed a
document, record, or thing.  Peter was
not indicted for concealing evidence, but for conspiracy to fabricate
evidence.  The work-product exception,
therefore, does not apply, and the trial court did not err when it refused to
include Peter=s
requested instruction.  This holding
makes Peter=s
ineffective assistance claim moot. 
Issues six and seven are overruled.

C. 
Motion for New Trial.

Peter filed a motion for new trial that was based
in part on newly discovered evidence. 
Peter testified at trial that he had tape-recorded his conversations
with Gaitan but that they had been accidentally erased.  Peter contended that, after the trial, he was
able to recover part of the recordings and prepare a transcript.  The trial court held a hearing and ordered
Peter to produce all tape or digital recordings of his conversations with
Gaitan as well as the digital recording device with memory card and the
original analog tape used to create his transcript.  Peter=s
motion was subsequently overruled without further hearing or evidence.








We review the grant or denial of a motion for new
trial under an abuse of discretion standard. 
See Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).  We may not substitute our judgment for that
of the trial court, Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App.
1992), and credibility of the witnesses is primarily a determination for the
trial court. Hoyos v. State, 951 S.W.2d 503, 511 (Tex. App.CHouston [14th Dist.] 1997), aff=d, 982 S.W.2d 419 (Tex. Crim. App.
1998).  As finder of fact, the trial
court may accept or reject any or all of the testimony given by State or
defense witnesses.  Johnson v. State,
571 S.W.2d 170, 173 (Tex. Crim. App. 1978); see also Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
Thus, we are authorized to (1) apply a deferential standard of review to
the trial court=s
resolution of historical facts and (2) rely upon implied findings of fact that
are supported by the record to uphold the trial court=s
ruling, even when the trial court is not faced with expressly conflicting
affidavits or testimony.  Charles v.
State, 146 S.W.3d 204, 206 (Tex. Crim. App. 2004); Villarreal v. State,
79 S.W.3d 806, 811‑12 (Tex. App.CCorpus
Christi 2002, pet. ref=d).

A new trial shall be granted an accused where
material evidence favorable to the accused has been discovered since
trial.  Tex.
Code Crim. Proc. Ann. art. 40.001 (Vernon 2006).  The party who moves for a new trial based on
newly discovered evidence must satisfy a four‑part test:  (1) the newly discovered evidence was unknown
or unavailable to the accused at the time of his trial; (2) the accused=s failure to discover or obtain the
evidence was not due to a lack of diligence; (3) the new evidence is admissible
and is not merely cumulative, corroborative, collateral, or impeaching; and (4)
the new evidence is probably true and will probably bring about a different
result in another trial.  See Keeter
v. State, 74 S.W.3d 31, 36‑37 (Tex. Crim. App. 2002).

The record does not establish an abuse of
discretion.  Peter knew about the
recordings at the time of trial because he testified about them.  Whether he exercised due diligence to recover
those recordings before trial is inherently a fact issue.  Under our deferential standard of review, we
cannot second-guess the trial court=s
implied finding that he did not do so. 
Furthermore, the only purpose of the new evidence was to impeach Gaitan=s testimony about his conversations
with Peter.  Because impeachment evidence
is not Anew
evidence@ for
purposes of a new trial, this also supports the trial court=s decision.  Issues eight and nine are overruled. 

                                 IV. Holding

The judgment of the trial court is affirmed.

 

 

PER CURIAM

 

June 7, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., 

McCall,
J., and Strange, J.











[1]Marcos Gallardo pleaded guilty to the offense of
indecency with a child by exposure.  He
filed an application for writ of habeas corpus. 
The trial court denied that application, and he appealed to this
court.  We affirmed the trial court.  Gallardo v. State, No. 11-04-00049-CR
(Tex. App.CEastland, Sept. 30, 2004, no pet.).  All references to Gallardo=s appeal are to Cause No. 11-04-00049-CR.